IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | |
| DEMAR A. BROWN, | * | CRIMINAL NO. GJH-18-335 |
| JASHON C. FIELDS, and | * | |
| KAMAR O. BECKLES, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*\*\*\*\*\*\*

## MOTION FOR RULE 15 DEPOSITIONS

The United States of America, by and through its attorneys, moves for permission to conduct a Rule 15 deposition of victim L.J., who will likely be unavailable to testify at trial. The Government also requests that the Court hold a hearing (either by video or in-person) or otherwise rule on this motion no later than **the week of August 9, 2021**, so that the requested deposition can be completed prior to the trial in this matter, which is set to begin on August 30, 2021.[1]

### Factual Background

On January 26, 2018, Defendants Demar Brown, Jashon Fields, and Kamar Beckles were arrested in connection with a series of residential burglaries that occurred in Baltimore County, Maryland. Further investigation revealed that Brown and Beckles were responsible for three residential burglaries that occurred in Milton, Georgia—a suburb of Atlanta—on January 24, 2018.

On June 19, 2018, a Grand Jury in the District of Maryland returned a four-count Indictment charging Brown, Fields, and Beckles with Conspiracy, in violation of 18 U.S.C. § 371 (Count

---

[1] Government counsel, on July 19, 2021, inquired with defense counsel (and standby counsel to Defendant Beckles) concerning their position on a Rule 15 deposition of L.J. Counsel to Fields consents to it. As of the time of filing, undersigned counsel has not received a response from counsel to Brown or standby counsel to Beckles.

1

One), and Interstate Transportation of Stolen Property, in violation of 18 U.S.C. § 2314 (First Paragraph) (Counts Two through Four).

On June 11, 2019, the Grand Jury returned a four-count Superseding Indictment. The Superseding Indictment charged all of the same offenses; however, additional overt acts were alleged, and Defendant Fields was charged only in connection with Count One.

On April 30, 2021, the Grand Jury returned a Second Superseding Indictment that charged the same offenses and, among other things, added an additional Count of Attempted Interstate Transportation of Stolen Property (Count Five).

The Government anticipates that many of the owners and residents of the homes burglarized by Defendants in this case will testify at trial. Some of those victims reside in Georgia and have recently expressed a strong reluctance to travel to Baltimore to testify in light of the COVID-19 pandemic. One of those victims (L.J.) in particular is elderly, cares for her elderly and ailing husband (also a victim), and is gravely concerned about the health risks of traveling to Baltimore in the midst of the pandemic.

## Argument

The Court should order that the Government be permitted to take a deposition of L.J. for purposes of the Defendants' trial, as she will likely be unavailable to testify during trial.

A.  **The Law**

Rule 15(a) of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." The 1975 enactment Advisory Committee Notes, discussing depositions by a defendant, flesh out the rule to some degree: "The court may grant the motion if it appears that (a) the prospective witness will be unable to attend or be prevented from attending the trial, (b) the prospective

witness' testimony is material, and (c) the prospective witness' testimony is necessary to prevent a failure of justice." "A party may use all or part of a deposition as provided by the Federal Rules of Evidence." Fed. R. Crim. P. 15(f). Under Federal Rule of Evidence 804(b)(1), if a declarant is unavailable as a witness, his/her testimony taken pursuant to a lawful deposition during the current proceeding is admissible despite the general prohibition on hearsay, so long as the party against whom the declarant's statements will be admitted had an opportunity and similar motive to develop the prior testimony by examination.

The Fourth Circuit has not directly addressed Rule 15's "exceptional circumstances" standard in detail, but the few Fourth Circuit cases relying on Rule 15 are consistent with reading "exceptional circumstances" as requiring the moving party to establish "at least that the witness will likely be unavailable to testify at trial and that the witness's testimony is material." *United States v. Jefferson*, 594 F. Supp. 2d 655, 664 (E.D. Va. 2009); *United States v. Hajbeh*, 284 F. Supp. 2d 380, 384 (E.D. Va. 2003); *see also United States v. McHan*, 101 F.3d 1027, 1037 (4th Cir. 1996) (noting that "[w]hen the government knows that a witness will be unavailable, it has the choice of seeking to preserve the witness's testimony under Federal Rule of Criminal Procedure 15, or relying at its own risk on its ability to introduce hearsay (such as the witness's grand jury testimony), or losing the benefit of the witness's testimony altogether"); *United States v. Rivera*, 859 F.2d 1204, 1207 (4th Cir. 1988) (upholding district court order allowing illegal alien material witnesses to be deposed and released from custody). The Fourth Circuit caselaw is consistent with the caselaw from other federal courts of appeals. *See generally United States v. Liner*, 435 F.3d 920, 924 (8th Cir. 2006) ("To establish exceptional circumstances, the moving party must show the witness's unavailability and the materiality of the witness's testimony."); *United States v. Kelley,* 36 F.3d 1118, 1125 (D.C. Cir. 1994) ("Critical factors . . . include (1) the materiality of the testimony; and (2) the unavailability of the witness to testify at trial."); *United States v. Ismaili*,

828 F.2d 153, 159 (3d Cir. 1987) ("[W]hen the district court exercises its discretion in ruling on a Rule 15(a) motion, considerations of materiality (of the testimony) and unavailability (of the witnesses) remain critical.").

"Unavailability is to be determined according to the practical standard of whether under the circumstances the Government has made a good-faith effort to produce the witness to testify at trial." *United States v. Mostafa*, 14 F. Supp. 3d 515, 519 (S.D.N.Y. 2014) (quoting *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984) (citing *Ohio v. Roberts,* 448 U.S. 56, 74 (1980); *California v. Green*, 399 U.S. 149, 189 n. 22 (1970) (Harlan, J., concurring)). "The lengths to which the prosecution must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness." *Green*, 399 U.S. at 189 n.22 (Harlan, J., concurring).

Unavailability is determined by reference to Rule 804(a). The relevant portions of that rule applicable here are whether the witness would refuse to testify despite a court order to do so; cannot be present or testify at the trial because of a then-existing infirmity, physical illness, or mental illness; or is absent from the trial and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance. Representations by counsel are sufficient to establish the likelihood of unavailability. *Jefferson*, 594 F.Supp. 2d at 665-66; *United States v. Des Marteau,* 162 F.R.D. 364, 369 (M.D. Fla. 1995) ("[Rule] 15 does not explicitly require supporting affidavits, and representations made by counsel in open court have been held sufficient to establish probable unavailability."). Courts must assess the unavailability of a potential witness by carefully examining all the reasonably reliable available information and then making a reasoned judgment as to a person's unavailability.

    B.    **The COVID-19 Pandemic**

The Court, as with the whole world, is aware of the current COVID-19 pandemic. Judges in this District have written extensively on the subject while ruling on motions for pre-trial release or compassionate release. Though many of the relevant metrics—hospitalizations, deaths, positivity rates, etc.—indicate that COVID-19 is far less prevalent in our community and other communities across the county in light of, among other things, the fact that large portions of the community have been vaccinated, there can be no question that COVID-19 is still very much a serious public health thread. Indeed, the highly transmissible Delta variant of COVID-19 appears to be spreading rapidly, some jurisdictions are reimposing COVID-19 precautions (such as mask wearing and quarantine requirements), and breakthrough COVID-19 cases of even vaccinated individuals remain a possibility.

### C. The Victims Likely Will Be Unable To Attend Trial

For the reasons above, and consistent with the 1975 enactment Advisory Committee Notes, "it appears that" the victim L.J. "will be unable to attend or be prevented from attending the trial." Her inability is entirely the cause of the response to and concerns regarding COVID-19. For example, during a call with victim L.J. (age 76) on July 19, 2021, L.J. expressed a very strong reluctance to travel in light of her age and health issues. She also expressed concerns about her husband (age 79) traveling in light of his age and concerns regarding his health too. In light of these issues and the COVID-19 pandemic, L.J. has stated that she has no desire to travel to Baltimore with her husband or to leave her husband in Georgia were she to travel alone. Thus, there is the distinct possibility that she may refuse to appear in federal court in Baltimore, Maryland, despite a court order to do so, or otherwise cannot be present or testify at the trial because of a then-existing medical condition. *Cf. United States v. Yates*, 2020 WL 3316053, at *7 (denying motion to transfer venue and stating that "because it is a given that travel by air will be required for a good number of participants, the trial will not be able to proceed, whether it is here

5

[in Connecticut] or in California, until the safety of airline passengers can be reasonably assured"); *United States v. Scher*, 2020 WL 3086234, at * 3 (D. Haw. June 10, 2020) (denying compassionate release motion and noting that, "Although the coronavirus is not as active in Hawaii as it is elsewhere, to return to Hawaii, Scher will have to board an airplane, and that travel alone could present increased risks of contracting COVID-19. Possibly, the travel risks could lessen in the coming months, either because the virus subsides or because airlines implement better ways to reduce the risk.").

For now, the Court must only determine whether it appears likely that L.J. will be unable to attend trial. The Court need not make any ultimate determination regarding her unavailability within the meaning of the Federal Rules of Evidence until the Government seeks to introduce her deposition testimony at trial. *See* Fed. R. Crim. P. 15 ("An order authorizing a deposition to be taken under this rule does not determine its admissibility. A party may use all or part of a deposition as provided by the Federal Rules of Evidence."); Fed. R. Evid. 804(b)(1) (excluding from hearsay lawful deposition testimony only "if the declarant is unavailable as a witness").[2]

### D. The Victim's Testimony Is Material and Necessary To Prevent a Failure of Justice

On January 24, 2018, L.J.'s home in Milton, Georgia, was burglarized and thousands of dollars of loose change and various pieces of jewelry were stolen. L.J.'s stolen jewelry was recovered by law enforcement in Room 127 of the Days Inn in Towson, where Defendant Brown was staying prior to his and his co-defendants' arrests on January 26, 2018. Defendants Beckles and Fields were staying in Room 128 of the Days Inn. Both rooms were rented by Beckles.

---

[2] Here, the Government may only compel a victim's appearance with a trial subpoena. And realistically, the Government would not likely be in a position to reasonably enforce a trial subpoena compelling even a victim's attendance at trial, short of seeking and securing a material witness warrant, taking the victim into custody, and having them physically transported through interstate, custodial transport by the U.S. Marshals.

Further, more than two thousand dollars in loose change was recovered from the 2003 Ford Explorer driven by Defendant Brown on the night of his arrest.

The burglary of L.J.'s home is charged as an overt act in furtherance of the conspiracy. *See* Second Superseding Indictment ¶ 12(j) ("On or about January 24, 2018, BECKLES unlawfully broke and entered into RESIDENCE 15 and RESIDENCE 16, both located on White Columns Drive in Milton, Georgia, and stole property from the residences, including jewelry and approximately $2,500 in loose change, fled with the stolen property in a vehicle driven by BROWN, and the property was later transported to, and stored in Maryland, at a hotel room in Towson, Maryland, rented and used by the conspirators, and in a dark green 2003 Ford Explorer with North Carolina plates used by the conspirators and driven by BROWN."). Accordingly, L.J.'s testimony helps to prove the conspiracy to transport stolen property in interstate commerce, and it likewise tends to prove the substantive Interstate Transportation of Stolen Property counts too. There is thus no question that her testimony is material.

Furthermore, though not strictly necessary under prevailing Fourth Circuit caselaw to establish the propriety of a Rule 15 deposition, the Government respectfully submits that a failure to take the victim's deposition would result in a failure of justice. Without L.J.'s testimony, the jury will be deprived of specific, factual information that is of great relevance to the determination of the Defendants' guilt.

E.    **Taking a Rule 15 Deposition Will Not Prejudice the Defendants**

Finally, taking L.J.'s deposition under Rule 15—with the expectation that the deposition would later be introduced at trial, subject to the Federal Rules of Evidence—does not violate the Defendants' confrontation rights. The Confrontation Clause does not preclude admission of prior testimony of an unavailable witness, *Mattox v. United States*, 156 U.S. 237 (1895), provided the victims' unavailability is shown and the defendant had an opportunity to cross-examine the

witness.  *See Ohio*, 448 U.S. at 73; *Mancusi v. Stubbs*, 408 U.S. 204, 216 (1972); *Green*, 399 U.S. at 165–66.  Here, the Defendants will have a full opportunity, with counsel, to confront and cross-examine the victims.  Accordingly, there would be no violation of the defendants' Sixth Amendment rights by permitting a Rule 15 deposition.

## Conclusion

Accordingly, a request for a deposition of victim L.J. in this case is reasonable and based on exceptional circumstances.  The Government requests that the Court order such a Rule 15 deposition.  Under Rule 15(c) and (d), each defendant has the right to be present at the deposition, with his counsel, at the Government's expense.  However, since the Defendants are in custody and for other practical reasons, the Government anticipates seeking to take the deposition by video conference.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: /s/
Paul A. Riley
Chris M. Rigali
Assistant United States Attorneys